## CLARENCE E. TUTTLE & another *vs.* GEORGE KILROA.

Suffolk.    January 18, 1900. — November 27, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Injunction — Tenants in Common — Partition — Right to use Passageway —*
*Deed — " Privileges and Appurtenances " — Merger.*

At the trial of a bill in equity to enjoin the defendant from obstructing the plaintiff
in the use of a passageway by a fence built across the end of it, it appeared that
the premises belonging to the defendant, and a portion of those belonging to the
plaintiff, formerly belonged to K. and S. as tenants in common; that S. died in
1824, and commissioners were appointed to set off the widow's dower and to
make partition between his heirs and K.; that they established a common way,
described in their return as extending twenty links wide from the county road,
to the barn and barnyard; that the plaintiff derived title through the S. heirs to
premises bounded by the commissioners on one side by the common way as far
as that extended, and then by a straight line as far as the land owned in common
extended; and title through K. to premises abutting against the end of the com-
mon way and bounded on one side by the land set off to the S. heirs, and they con-
stituted lot 30 on a plan in the case, and the defendant derived title through K.
alone, the premises belonging to him being at the bottom of the way and bounded
on one side by the way and on another by lot 30. *Held,* that by the commis-
sioners' return the right to use the way was appurtenant to each and every part
of the land set off to the S. heirs and to K., and had passed by mesne convey-
ances to the plaintiff so far as he is the successor in title to any part of the lands
set off to the S. heirs and to K., some of the deeds conveying in express terms a
right to use the common way and the right passing in others under the phrase
" privileges and appurtenances." *Held, also,* that the contention that the plain-
tiff had no right to pass from the end of the way on to lot 30, and thence to
premises derived by him from the S. heirs, could not avail.

A full and unlimited right of disposition and power of control over the land em-
braced in a way is necessary to a merger and extinguishment of the right of
way; and in this case, which was a bill in equity to enjoin the defendant from
obstructing the plaintiff in the use of the way, in a material deed of the tract of
land of which a certain lot was a part and which was derived from K., who was
many years before a tenant in common with S., the habendum was, " with all
the rights, easements, privileges, and appurtenances to the premises belonging
or used or connected therewith "; and there was evidence which would justify a
finding that the way was used in connection with the tract thus conveyed, and
that the right to so use it passed to the grantee, his heirs and assigns; and also
that the right thus acquired by the grantee passed by subsequent arrangement
to the plaintiff; and in this view of the case it would be immaterial whether
there was a merger or not.

BILL IN EQUITY, filed in the Superior Court, to restrain the
defendant from obstructing a right of way claimed by the plain-

tiffs in and over certain premises in Boston known as " Gold-
smith Place." The following is a copy of the plan. Lots 6, 7,
8, 9, 10, which do not appear on the plan, are continuations in
a straight line of lots 4 and 5.

A decree was entered " that the plaintiffs have a right of
way over and across Goldsmith Place to and from Centre Street
and lots numbered thirty, a strip of land twelve feet wide across
the rear of lots four and five, lots six, seven, eight, nine and ten,
on a plan of land known as Robinwood, Jamaica Plain, dated

December first, 1893, which plan is duly recorded in the Registry of Deeds for said county, being the land set out and described in the plaintiffs' bill, and said defendant is to forthwith take up and remove from across said way any and all obstructions which he may have placed therein, and an injunction is to issue perpetually restraining and enjoining said defendant, his agents and servants, from in any way obstructing such use by the plaintiffs of said way, known as Goldsmith Place, and plaintiffs are to recover their costs of suit to be taxed by the clerk, and execution is to issue therefor in common form."

The defendant appealed to this court. The facts appear in the opinion.

*E. N. Hill*, for the defendant.

*A. H. Latham*, for the plaintiffs.

MORTON, J. This is a bill in equity to enjoin the defendant from obstructing the plaintiff in the use of a passageway known as Goldsmith Place in the city of Boston. There was a decree for the plaintiff, from which the defendant appealed. The testimony was taken by a commissioner in accordance with Chancery Rule 35 of the Superior Court, and is before us. It includes a reference to and extracts from the deeds and instruments, which are numerous, on which the parties rely. We do not deem it necessary to consider in detail the deeds and instruments thus referred to. Several plans were also in evidence before the commissioners and have been before us. From the testimony as reported it appears that the premises now belonging to the defendant, and a portion of those belonging to the plaintiffs, formerly belonged to one Kingsbury and one Seaverns as tenants in common. Seaverns died in 1824, and commissioners were appointed to set off the widow's dower and to make partition between Kingsbury and the Seaverns heirs, and did so. In making the partition the commissioners established and provided a common way which is described in their return as extending from the county road to the barn and barnyard, and as being twenty links wide. This is the way spoken of in the bill as Goldsmith Place. The plaintiffs derive title through both Kingsbury and the Seaverns heirs. The premises to which they derive title through the Seaverns heirs were bounded by the commissioners on one side by the common way as far as that

extended, and then by a straight line as far as the land owned in common extended. The premises to which they derive title through Kingsbury abutted against the end of the common way, and were bounded on one side by the land set off as above to the Seaverns heirs, and constitute lot 30 on the plan. The defendant derives title through Kingsbury alone, and the premises belonging to him are at the bottom of the way, and are bounded on one side by the way and on another side by lot 30 aforesaid. The obstruction consists of a fence built by the defendant across the end of the way. The question is whether the plaintiffs have the right to pass and repass along Goldsmith Place to its end and thence to lot 30, and across lot 30 to land set off by the commissioners to the Seaverns heirs. It seems to us clear that they have such right.

We think that the use of the common way referred to in the commissioners' return was intended to be appurtenant to each of the tracts into which the original tract was divided by the commissioners. It is expressly provided in the return that the Seaverns heirs are to have the "free use of the common way," and that the way is "to be used in common," meaning, of course, by the parties between whom the partition is made. The way is spoken of more than once in the return as a common way, and the premises set off to the Seaverns heirs are bounded upon it as a common way. The only reasonable construction of the return is, it seems to us, that the way was intended for the convenience and benefit of the parcels into which the commissioners divided the real estate of which they were appointed to make partition. The way is spoken of as "running from the county road to the barnyard and barnyard" (meaning, we suppose, "barn and barnyard"), but there is nothing in the return limiting its use to passing and repassing to and from the barn and barnyard, or preventing its use for the purpose of passing and repassing to and from each and every part of the parcels bounded or abutting upon it by the partition. Whether the effect of bounding the premises set off to the Seaverns heirs "by the common way" was to carry the fee to the centre of the way, or whether the effect of the partition was to leave the fee of the way in Kingsbury, we need not consider. If the fee was in Kingsbury, the way was subject, as already observed, to a free

use by the Seaverns heirs. According to the plan made by the commissioners, it would seem that the land embraced in the common way was not included in the land set off to the Seaverns heirs or to Kingsbury, but was left to lie in common. But however that may be, we can have no doubt that the right to use the way was appurtenant to each and every part of the land set off to the Seaverns heirs and to Kingsbury respectively, and has passed by mesne conveyances to the plaintiffs, so far as they are the successors in title to any part of the lands set off to the Seaverns heirs and to Kingsbury. Some of the deeds convey in express terms a right to use the common way, and in others it passes under the phrase " privileges and appurtenances."

The defendant contends that if the effect of the commissioners' return was to create a right of way appurtenant to the tract of which lot 30 originally formed part, the right was extinguished so far as that tract was concerned by unity of title and possession in Goldsmith. But assuming that Kingsbury took the fee in the common way, and that Goldsmith as successor in title to him also took the fee, he held it subject to the free use of the way by the Seaverns heirs and their successors in title, and therefore had not that full and unlimited right of disposition and power of control over the land embraced in the way necessary to a merger and extinguishment of the right of way. *Ritger* v. *Parker*, 8 Cush. 145. *Reed* v. *West*, 16 Gray, 283. *Atlanta Mills* v. *Mason*, 120 Mass. 244, 251. *Crocker* v. *Cotting*, 170 Mass. 68. *Thomas* v. *Thomas*, 2 C., M. & R. 34, 41, and note. *Dority* v. *Dunning*, 78 Maine, 381. *Bull, petitioner*, 15 R. I. 534.

But however that may be, in the deed from Ruthy B. Goldsmith, executrix to Norman W. Stearns, of the tract of land of which lot 30 was a part and which was derived from Kingsbury, the habendum was " with all the rights, easements, privileges, and appurtenances to the premises belonging or used or connected therewith." There was evidence which would justify the presiding judge in finding that the way was used in connection with the tract thus conveyed, and that the right to so use it passed to Stearns, his heirs and assigns. There was also evidence justifying the presiding judge in finding that the right

thus acquired by Stearns passed by assignment to the plaintiff. In this view of the case it would be immaterial whether there was a merger or not.   See *James* v. *Plant*, 4 A. & E. 749 ; Gale, Easements, (7th ed.) 82, 92.

The defendant further contends that the plaintiffs have no right to pass from the end of the way on to lot 30, and thence to premises derived by them from the Seaverns heirs.   But it seems to us immaterial whether the plaintiffs go from the end of the way directly on to premises originally set off to the Seaverns heirs or reach those premises through lot 30.   They have the right to use the way as a means of access to and from any part of the premises derived by them from the Seaverns heirs, and the burden upon the defendant's premises, assuming that he owns the way adjacent to his premises, is not increased by their going from the way on to lot 30, and then on to the premises derived by them from the Seaverns heirs.   The case stands altogether differently from what it would if they had no right to use the common way for the purpose of passing and repassing to and from land derived by them from the Seaverns heirs.

It might perhaps admit of question whether, even if the plaintiffs had no right to pass from the way on to lot 30 and thence on to their other land, the defendant would have a right to erect a fence across the way.   But no such question has been argued, and we have not considered it.               *Decree affirmed.*