GEORGE B. PRESTON & others vs. WEST'S BEACH
CORPORATION.

Suffolk.    March 18, 19, 1907. — May 15, 1907.

Present: KNOWLTON, C. J., HAMMOND, SHELDON, & RUGG, JJ.

*Joint Tenants and Tenants in Common.    West's Beach Corporation.    Seashore.
Corporation, Ultra vires.    Estoppel.    Equity Pleading and Practice,* Trial
of issues framed for jury.

A tenant in common owning in fee an undivided share in land upon the seashore
may maintain a bill in equity against a stranger to the title to restrain him from
unlawfully erecting bath houses and other structures upon the beach included in
the land.

St. 1852, c. 157, incorporating West's Beach Corporation, providing that " the
members of said corporation may use and occupy said described portion of sea-
shore, beach, and flats, for the purposes of gathering drift-stuff and sea-weed,
and of boating and bathing, as said premises have heretofore been used and
occupied by them and their predecessors," contains a provision that nothing
contained in the act shall be so construed as " to impair the legal rights of any
person," and therefore gave that corporation no valid title as against the legal
title of any private owner, passing to the corporation only such public or com-
mon rights as existed in the tract described in the grant.

For the purposes of this decision, it was assumed, without deciding it, that West's
Beach Corporation, incorporated by St. 1852, c. 157, by reason of the different
proceedings before the Legislature and the town of Beverly, and the notoriety
of the acts of the corporation in regard to the beach, has acquired a title by
disseisin and limitation to all the property described in its charter against such
private owners as have made no claim since the corporation took possession.

St. 1852, c. 157, incorporating West's Beach Corporation, provides that " the mem-
bers of said corporation may use and occupy said described portion of sea-shore,
beach, and flats, for the purposes of gathering drift-stuff and sea-weed, and of
boating and bathing, as said premises have heretofore been used and occupied
by them and their predecessors." It further provides that " No member of this
corporation shall transfer his corporate right in said beach ; but said beach shall
be and forever remain, for the use of the present and future residents within
the limits designated in the first section of this act." The corporation made
an agreement under seal with the owner of an upland lot adjoining West's
Beach, whereby the corporation agreed to release to him " all interest they may
have to that portion of the beach which fronts upon his land situated to the
westward of a line " described "reserving only such privileges as may have been
acquired by usage or otherwise, to collect seaweed and driftwood and to pass
and repass over said beach which privileges are still to remain to be enjoyed by
them in common with the owner of said land. Said corporation further agree-
ing that the sixth and seventh sections of their act of incorporation [relating to
the removal of sand, gravel, drift-stuff and seaweed] shall not apply to said por-
tion of the beach." Then followed a stipulation that no sand should be removed

from this portion of the beach, under a prescribed penalty. Before this agree-
ment was made there had been doubtful questions in regard to the respective
rights of the corporation and the owner of the upland lot in the beach, and the
agreement had been preceded by negotiations between the parties and by votes
of the corporation. After the execution of the agreement, the owner of the
upland lot and his successors in title treated it as binding, and for a long time
the corporation did the same, but afterwards proposed and attempted to erect
and maintain bath houses and other structures on this part of the beach. In a
suit by the successors in title of the owner of the upland lot against the corpora-
tion to restrain it from committing these acts, the defendant contended that the
agreement purporting to be made by it as above described was *ultra vires* and
void. *Held,* that, even if the defendant could not bind itself in this way for the
settlement of doubtful questions affecting its rights, which the court was not
prepared to assert, it at least was bound by the agreement by way of estoppel
after both parties had acted upon it.

In a suit in equity to restrain West's Beach Corporation, organized under St. 1852,
c. 157, from erecting bath houses and other structures on a beach in which the
plaintiffs were owners in fee of undivided shares as tenants in common, where
the rights of the respective parties were found to depend on an agreement in
writing between the defendant and a predecessor in title of the plaintiffs, who
owned as tenant in common the same undivided shares held by them, in decid-
ing that the agreement was binding upon the defendant at least by way of es-
toppel, the court *held* that any prescriptive rights which the defendant might
have acquired as against the other tenants in common of this part of the beach
were subject to the rights of the plaintiffs under the agreement.

In a suit in equity to restrain the defendant from erecting bath houses and other
structures on a beach alleged to be owned by the plaintiffs, where it is admitted
that the plaintiffs are owners in fee as tenants in common with others of
undivided shares of the upland and that if they own the beach they own it in
the same way, one of the issues framed to be tried before a jury was whether
the predecessor in title of the plaintiffs at a time named owned "the fee of
said land." At the trial of the issues before the jury, the presiding judge ordered
the jury to answer this question " Yes, as tenant in common." The defendant
contended that the judge could not direct the answer in this form. *Held,* that
the addition of the words "as tenant in common" showed partly the nature
and extent of the plaintiffs' predecessor's ownership in fee, and, even if the
words were not necessary in answering the issue as it was framed, they were
desirable and not objectionable.

Where in a suit in equity issues are framed to be tried before a jury, if the answers
to the issues which are tried rightly are sufficient to enable this court to dispose
of the case, it does not matter whether or not there was error in the trial of
the other issues, and it is not necessary to consider exceptions to the exclusion
of evidence offered upon such other issues which has no bearing on the issues
on which the case is decided.

BILL IN EQUITY, filed in the Superior Court on January 20,
1898, to restrain the defendant and its officers from entering
upon and erecting bath houses and other structures on the plain-
tiffs' beach at Beverly Farms.

The plaintiffs' land consists of a tract of about one and a half

acres with a dwelling house and stable thereon, situated at the westerly end of West's Beach in that part of Beverly called Beverly Farms. The northerly boundary is West Street. The plaintiffs claimed ownership to low water mark, including the beach and flats in front of their house and upland.

The defendant claimed ownership of the sands between the plaintiffs' upland and high water mark as well as of the beach between high water mark and low water mark, and proposed to erect bath houses and other structures on the sands between the upland and the sea.

After the completion of the pleadings issues were framed, which were sent to the law side of the court to be tried before a jury. There the issues were sent to an auditor, R. D. Weston-Smith, Esquire, who heard the parties and made a report generally sustaining the contentions of the plaintiffs and answering the issues in accordance with the claim of the plaintiffs. The case then was tried upon the same issues before *Flaherty*, J. At the conclusion of the evidence the judge directed the jury to answer the issues in favor of the plaintiffs as stated more fully below. To certain rulings of the judge at the trial the defendant excepted.

After the death of *Flaherty*, J. the exceptions were allowed by *Richardson*, J. He also heard the case on a motion of the plaintiffs for a final decree, upon the bill, the answer and the findings of the jury on the issues which had been submitted to them. He was of opinion that the plaintiffs were entitled to relief substantially as prayed for in their bill, and so ordered; to which order the defendant excepted. The judge reserved and reported the case on the bill, the answer and the findings of the jury, and all questions of law therein, for determination by this court, such orders and decrees to be made as law and justice require.

St. 1852, c. 157, the defendant's charter, entitled "An Act to incorporate West's Beach Corporation," is as follows:

"Be it enacted by the Senate and House of Representatives, in General Court assembled and by the authority of the same, as follows:

"Section 1. Peter Pride, West D. Eldredge, William Perry, Issachar T. Eldredge, Elisha Pride, and all others, resident in-

habitants of that portion of the West Farms School District, in the town of Beverly, which lies easterly of a line commencing at the mouth of the creek at the salt pond, so called, at low-water mark, and running from thence north-westerly to the south-west corner of the estate of William Perry, thence northerly to the north-west corner bounds of the East Farms School District, together with all the resident inhabitants of the East Farms School District, in said town, and their successors, are hereby made a corporation by the name of West's Beach Corporation, with all the powers and privileges, and subject to all the duties, liabilities, and restrictions, set forth in the forty-fourth chapter of the Revised Statutes.

" Section 2. The said corporation are hereby authorized to take and hold all that portion of the sea-shore, beach, and flats, at Beverly farms in said town of Beverly, which is included within the following limits, to wit: commencing on the highway, at the west corner of land of the heirs of James Woodberry, and running by an old wall south forty-four degrees east, twenty-one rods and seventeen and one half links to a point near the west corner of land of Henry Lee, Jr; thence south four degrees east, six rods and thirteen links to a large and permanent rock in the ledge; thence south forty-one degrees west, or by low-water mark, over a large high rock in a ledge called the Cove rocks, forty-five rods to the western edge of said ledge; thence north forty-four degrees west, across flats twenty-two rods to the western edge of a ledge lying west of said Cove rocks; thence north fifty degrees and thirty minutes west, across flats and beach twenty-one rods to the south-west corner of Jonathan Preston's land; thence by said Preston's land north sixty-six degrees east, eighteen rods; thence by said Preston's land north twenty-two degrees east, four rods and sixteen links; thence by said Preston's land north ten degrees west to the highway on West Street; thence by said highway thirty rods to the bounds first mentioned, being a portion of the land, beach, and flats, originally granted by the town of Salem to one John West, in the year one thousand, six hundred and sixty-six, which portion has been occupied and improved ever since by him and his heirs, and by these proprietors and their predecessors claiming under and through him and them.

"Section 3. The members of said corporation may use and occupy said described portion of sea-shore, beach, and flats, for the purposes of gathering drift-stuff and sea-weed, and of boating and bathing, as said premises have heretofore been used and occupied by them and their predecessors.

"Section 4. Said corporation are hereby required to keep in good repair for public travel, the causeway across the creek and marsh adjoining said beach, to the westerly side of the way leading to the estate of Henry Lee, Jr; and for the protection of the residue of the highway along said beach, shall also, so far as is consistent with convenient access to the beach, build and maintain a good stone wall extending from the westerly end of said causeway to land of Jonathan Preston.

"Section 5. [Stricken out and a new section substituted.] All the legal voters included as members of said corporation shall be liable to an uniform assessment of one dollar and twenty-five cents each, payable in labor, for the erection of said wall; and such further expenditure, if any, as may be necessary to complete said wall, and to keep the same and the causeway aforesaid in good repair, shall be assessed, payable in labor, upon the members of said corporation, by the directors thereof, in proportion to the benefits they may respectively receive from said beach. And if any member shall neglect or refuse to contribute his proportion of labor assessed as aforesaid, or to pay the value thereof in money on demand, he shall be debarred from all privileges granted by this act until he shall have paid to the treasurer of said corporation, in money, the amount of all such unpaid assessments due from him, with interest, and all costs and expenses consequent upon his delinquency.

"Section 6. No member of this corporation shall remove any sand or gravel from said beach without replacing, within twenty-four hours after such removal, an equal quantity of stone or gravel; and if any member shall neglect to do so, it shall be the duty of the directors of said corporation forthwith to repair such deficiency; and such delinquent member shall be debarred from all privileges granted by this act, until he shall have paid to the treasurer double the amount which may have been expended to replace such sand or gravel so removed.

"Section 7. No person, not a member of this corporation,

shall at any time obtain or remove any sand or gravel, drift-stuff, or sea-weed, from said beach, under penalty of twenty dollars for each offence.

" Section 8. [Stricken out and a new section substituted.] No member of this corporation shall transfer his corporate right in said beach ; but said beach shall be .and forever remain for the use of the present and future residents within the limits designated in the first section of this act.    Nor shall any member sell any sea-weed from said beach ; and no sea-weed or other material shall be gathered upon or removed from said beach on the Lord's day, under a penalty of ten dollars for each offence.

" Section 9. Nothing contained in this act shall be so construed as to grant any rights or privileges in any land, beach, or flats, outside of the limits designated in the second section of this act, or to impair the legal rights of any person.

" Section 10. It shall be the duty of the clerk of said corporation to keep an accurate list of the members thereof, and exhibit the same to the selectmen of the town of Beverly whenever required so to do."

St. 1866, c. 131, entitled " An Act to amend an Act to incorporate West's Beach Corporation " is as follows:

" Section 1. The one hundred and fifty-seventh chapter of the acts of the year eighteen hundred and fifty-two, is hereby amended as follows: by striking out from said act the fifth and eighth sections, and inserting instead thereof, as section five of said act, the following:

" ' All legal voters included as members of said corporation shall be liable to an uniform assessment of one dollar and twenty-five cents each ; and such further expenditure as may be necessary to keep the wall and causeway in good repair, and for incidental expenses, shall be assessed upon the members of said corporation by the directors thereof, in proportion to the benefits they respectively receive from said beach.    And if any member shall neglect or refuse to pay the said uniform assessment, or to contribute his proportion assessed as aforesaid, on demand, he shall be debarred from all privileges granted by said act, until he shall have paid to the treasurer of said corporation the amount of all such unpaid assessments due from him, with interest, and

all costs and expenses consequent upon his delinquency;' and by substituting as section eight of said act the following:

"'No member of this corporation shall transfer his right to take sea-weed from said beach, but said beach shall be and forever remain for the use of the present and future residents within the limits designated in the first section of said act; nor shall any member sell, convey or deliver any sand or sea-weed from said beach, to be removed outside the limits of said corporation, and no sea-weed or other material shall be gathered upon or removed from said beach on the Lord's day, under a penalty of ten dollars for each offence.'

"Section 2. This act shall take effect upon its passage.

"Approved April 7, 1866."

The records did not show that the corporation had any capital stock or any corporate shares.

The agreement, referred to and described in the opinion, between Jonathan Preston, a predecessor in title of the plaintiffs, and the defendant was as follows:

"An agreement in two parts made this second day of April in the year one thousand eight hundred and fifty-six by and between West's Beach Corporation of the County of Essex, on the one part, and Jonathan Preston of the County of Suffolk on the other. Witnesseth:

"That said West's Beach Corporation of the first part in consideration of one dollar to them paid by said Preston of the second part hereby agree to release to him, his heirs and assigns forever, all interest they may have to that portion of the beach which fronts upon his land situated to the westward of a line commencing at the most eastern part of land of said Preston, thence running south ten degrees east to the sea (said land being located as described in their act of incorporation) reserving only such privileges as may have been acquired by usage or otherwise, to collect seaweed and drift wood and to pass and repass over said beach which privileges are still to remain to be enjoyed by them in common with the owner of said land, said corporation further agreeing that the sixth and seventh sections of their act of incorporation shall not apply to said portion of the beach.

"It is further mutually agreed that neither the corporation

nor any member thereof nor the owner of said land shall remove any sand from said portion of beach under a penalty of ten dollars for each and every load so removed, said fine to be paid by the party committing the trespass, to the other party to this agreement together with such costs as may be incurred in collecting the same.

"Samuel Woodberry, 2d Prest.   (seal)

Jona. Preston,                  (seal)

"Executed in presence of

    Geo. Ropes, Jr.

    W. R. Emerson."

This instrument was acknowledged by Jonathan Preston before a justice of the peace, and was recorded with the Essex Deeds, South District.

The issues framed for the jury with the answers returned by the jury as directed by *Flaherty*, J. were as follows:

"1. Do the plaintiffs own the fee of the land claimed by them in their bill?"   Ans.  "Yes."

"2. Does the defendant own the fee of the land claimed by the plaintiffs in the bill?"   Ans.  "No."

"3. Have the defendant corporation and the members thereof the right to enter upon and to pass and repass over any and all parts of the said land and to and from the sea?"   Ans.  "Yes. By consent of the plaintiffs."

"4. Have the defendant corporation and the members thereof the right to gather drift stuff and sea-weed on the said land and to carry the same away?"   Ans.  "Yes.  By consent of the plaintiffs."

"5. Have the defendant corporation and the members thereof the right to remove sand and gravel from the said land?"   Ans. "No."

"6. Have the defendant corporation and the members thereof the right to go upon and use the said land for boating?"   Ans. "No."

"7. Have the defendant corporation and the members thereof the right to go upon and use the said land for bathing?"   Ans. "No."

"8. Have the defendant corporation and the members thereof a right to erect bath houses upon the said land?"   Ans.  "No."

" 9. Have the defendant corporation and the members thereof a right to erect upon the said land structures other than bath houses mentioned in the plaintiffs' bill?" Ans. " No."

" 10. Did Jonathan Preston at any time after April 3, 1847, and prior to April 2, 1856, own the fee of the said land?" Ans. " Yes, as tenant in common."

" 11. Did the defendant corporation or its predecessors in title at any time after April 3, 1847, and prior to April 2, 1856, own the fee of the said land?" Ans. " No."

*C. F. Choate, Jr.*, for the plaintiffs.

*E. I. Smith,* (*M. J. Connolly* with him,) for the defendant.

KNOWLTON, C. J. This bill is brought to restrain the defendant from erecting bath houses and other structures on the plaintiffs' beach at Beverly Farms. The case was heard at great length, first before an auditor and then before a jury, upon eleven issues which were framed for trial by the jury. It involves an investigation of titles, beginning with a grant from the town of Salem in 1635 and extending to deeds made only a few years ago. Questions were raised as to the validity and effect of two acts of incorporation of proprietors, one under a general law and the other under a special statute. A contract was made between the defendant and the plaintiffs' predecessor in title, which the defendant seeks to avoid on the ground that it was *ultra vires.* Both parties rely upon prescription, as well as conveyances, to establish a title that shall be available in support of their respective contentions.

The plaintiffs own about an acre and a half of land, near the sea, by a title that is unquestioned. They contend that their absolute title by deed extends to high water mark, and that, in addition to a tenancy in common by deed in the shore and the adjacent flats to low water mark, they have acquired rights in them by prescription. The defendant contends that the plaintiffs' boundary next the sea is a bank, separating the upland from the sand of the beach below at a distance of several rods from high water mark. A great many requests for rulings were made by the defendant, and numerous important questions of law have been argued before us, some of which it will be unnecessary to decide. The decision of the case will turn upon a few propositions.

The parties have filed a stipulation that the plaintiffs are owners of an estate in fee in the disputed tract, as tenants in common with others.  As against a stranger to the title, such a share is sufficient to entitle them to the relief for which they ask in this bill.  We may therefore turn at once to the defendant's claim of title.

The defendant was incorporated under the St. 1852, c. 157. This is a very peculiar act, which incorporates all the "resident inhabitants" of a certain territory, comprising most of two school districts in the town of Beverly, and which authorizes them to take and hold a described portion of the seashore, beach and flats at Beverly Farms.  It puts upon them the burden of keeping in repair a certain causeway across a creek and marsh, and provides that they "may use and occupy said described portion of sea-shore, beach, and flats, for the purposes of gathering drift-stuff and sea-weed, and of boating and bathing, as said premises have heretofore been used and occupied by them and their predecessors."  It contains a requirement that the legal voters who are members of the corporation shall be assessable a certain amount for the erection and maintenance of a stone wall at the causeway, and it makes regulations as to the removal of sand and gravel from the beach, and the gathering of drift stuff and sea weed.  It declares that "nothing contained in this act shall be so construed as to . . . impair the legal rights of any person."

Although the defendant relies somewhat upon an incorporation of proprietors under the general law in 1840, claiming the same property, we consider this of no further significance than to show that this beach had previously been treated almost like common property.  The defendant corporation has derived nothing from the former corporation.  It seems to have been supposed that there was a charge or a condition affecting this land, in reference to the maintenance of the causeway, according to the terms of the original grant from the town of Salem.  But it appears that, so far as the land now in dispute is concerned, this was a mistake.  The charge or condition was in a grant which did not include this part of the beach, although it included a part of that described in the statute.

What was the effect of this statute?  It assumed to give the

corporation a possessory title in the beach, if it chose to take and hold it. The corporation, having been duly organized, undertook the work required of it in the repair of the causeway, and did it to the satisfaction of the selectmen of the town. By a board of officers regularly elected from year to year, it has attempted to manage and control the property described in the act. Considering the situation and nature of the real estate, we think the defendant took it within the meaning of the statute, and has held it generally, although for the most part without reference to nice questions in regard to boundaries. The statute did not purport to take any property by right of eminent domain, and it expressly provided that it should not impair the legal rights of any person. Therefore the statute gave the corporation no valid title as against the legal title of any private owner. If there were any public or common rights in the tract included in the grant they passed to the corporation. The defendant's counsel argues that the Legislature " intended to gather up the fragmentary and unascertainable interests held by a great multitude of persons, and vest them immediately in a corporation, for the purpose of securing to those who appeared to be the owners and those who would otherwise become the future owners, the' beneficial use of West's Beach, for the purposes to which it had long been devoted." Very likely he is right in this ; but, if he is, the law-makers were careful not to attempt to interfere with private property. Doubtless they recognized their constitutional limitations. As against individual owners, nothing more than a possessory title was created, and as against them no rights have been acquired by the corporation otherwise than by disseisin.

If we assume, in favor of the defendant, that, by reason of the publicity of the different proceedings before the Legislature and the town, and the notoriety of its acts in regard to the beach, it has now acquired a title by disseisin to all the property described in the statute, as against all private owners who have made no claim since the corporation took possession, we come to their relations with the plaintiffs and the plaintiffs' predecessors in title, and ask whether they have acquired any rights against them.

After negotiations between the parties and votes of the corporation, an agreement under seal was entered into between the

defendant and Jonathan Preston who then owned the estate of the present plaintiffs, whereby the defendant was to release to him " all interest they may have to that portion of the beach which fronts upon his land situated to the westward of a line commencing . . . reserving only such privileges as may have been acquired by usage or otherwise, to collect seaweed and drift wood and to pass and repass over said beach which privileges are still to remain to be enjoyed by them in common with the owner of said land, said corporation further agreeing that the sixth and seventh sections of their act of incorporation shall not apply to said portion of the beach." Then followed a stipulation that no sand should be removed from this portion of the beach, under a prescribed penalty. Sections 6 and 7, referred to, relate to the removal of sand, gravel, drift stuff and seaweed. This instrument was executed in 1856.

The defendant contends that the agreement was *ultra vires* of the corporation and void, because, by the eighth section of the act, the beach is forever to remain for the use of the present and future residents within the limits designated, and the transfer of his right by a member is forbidden. We have no doubt that a sale of the beach as a whole was forbidden. But here was a small part of it, claimed by the plaintiffs' predecessor, and there was much reason to believe that he had a good title to high water mark. He was willing to give the defendants valuable rights in the disputed portion, and they entered into the agreement in order to settle, for all time, rights that otherwise would be doubtful. He and his successors treated the agreement as binding, and it seems that, for a long time, the defendant did also. In this trial the plaintiffs consented that the third issue, as to the right of the defendant and its members to enter upon and pass and repass over the land to and from the sea, and the fourth issue, as to the right of the defendant and its members to gather drift stuff and sea weed on the land and to carry it away, should be answered favorably to the defendant. We are not prepared to say that the corporation could not bind itself in this way for the settlement of doubtful questions affecting its rights. On the contrary, we think the defendant was bound by the agreement, at least by way of estoppel, since it was acted upon by both parties.

The agreement becomes very important, as bearing upon the nature of the subsequent occupation of the parties, and upon the question whether the corporation has acquired any right by disseisin or prescription against the plaintiffs. So far as the defendant has exercised the rights secured to it by the writing, its occupation, as between these parties, must be deemed permissive, and not adverse to the plaintiffs. Beyond the exercise of these rights, nothing is shown which approaches proof that the corporation has acquired any title or easement against the plaintiffs by a continuous adverse use and occupation for twenty years or more. If, as against other tenants in common who have made no claim to any part of the property, it has acquired, by its general occupation and supervision of the beach, a title to their shares by disseisin, its occupation has been all the time in subordination to the rights of the plaintiffs under this writing. The rights of others, which it may have acquired, are not their full former rights, because the defendant was subject to these written provisions in favor of the plaintiffs' predecessor in title. Or, to put the proposition in another form, so far as the defendant has acquired prescriptive rights from others, they have all the time been limited by this agreement while they were coming into the defendant's ownership, and as soon as they were held by a prescriptive title, good as against others, they were controlled, as between these parties, by the agreement which was made for their regulation.

The case stands with a conceded title in the plaintiffs as tenants in common, and with no title in the defendant, as against the plaintiffs, as to any of the matters in dispute. It therefore becomes unnecessary to decide whether the judge was right in his ruling that the plaintiffs have a perfect title by deed to high water mark, or whether the auditor was right in finding that the description of their land in the deed stopped at the bank, a considerable distance away from high water mark. We have little doubt that there was evidence before the auditor which would have warranted a finding in favor of the plaintiffs on this point. Whether the judge could rule on this point, as matter of law, against the finding of the auditor, is a different question.

There is no ground for the defendant's contention that the judge could not direct the jury to answer the tenth issue " Yes,

as tenant in common." The addition of the words, "as tenant in common," showed partly the nature and extent of Jonathan Preston's ownership in fee. If it was not necessary in answering the issue as it was framed, it was desirable and not objectionable. If the judge had chosen, he might have then amended the issue so as to require such an answer.

An error in the trial of any of the issues is immaterial, provided the answers to the issues rightly tried enable the court to dispose of the case. It therefore becomes unnecessary to consider the exceptions to the exclusion of testimony. None of this testimony had any bearing on the plaintiffs' conceded title as tenant in common, nor on the question whether the defendant had acquired a title by disseisin or prescription against the plaintiffs.

It follows that the judge was right in ordering a decree for the plaintiffs, and the exception to that order is overruled.

Upon the reservation of the case on all the questions before the court, the order is

*Decree for the plaintiffs with costs.*