THE DANA S. COURTNEY COMPANY *vs.* THE QUINNEHTUK COMPANY.

Hampden.    December 8, 1938. — April 13, 1939.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Water Rights. Deed,* Construction. *Easement. Prescription.*

Deeds, contemporaneously given in 1829 between owners of a lower and the owner of an upper water power on the Chicopee River to settle disputes between them, were construed to mean that the upper owner should have the absolute right to use as much of the water as he might see fit forever and that, while mention was made of a "sufficiency of water for the works of" the lower owners, the risk of their having such sufficiency after the upper owner exerted his absolute right should be upon them.

No easement can be implied from deeds whose construction negatives such implication.

No right in a lower riparian owner to receive water as against an upper owner arose by prescription where it appeared that such water as the lower owner had received was that which the upper owner had chosen not to withhold as he might have done under a right given by deeds between the parties, and that the lower owner had never taken water adversely to the upper owner.

BILL IN EQUITY, filed in the Superior Court on December 19, 1934.

The plaintiff appealed from a final decree, entered by order of *Burns*, J., dismissing the bill.

*J. M. Healy*, for the plaintiff.

*D. R. Pokross*, (*C. M. Storey* with him,) for the defendant.

QUA, J.   The plaintiff is the owner of a dam and power plant on Chicopee River next below a dam and power development of the defendant.  The defendant's canal is so constructed that it may and does divert some of the water from above the defendant's dam around the plaintiff's dam and back to the river below the plaintiff's dam.  Since 1932 changes in the defendant's works and in methods of operation have resulted in a substantial reduction in the amount of water reaching the plaintiff's dam.  The prayers of the bill are for injunctive relief and for damages.

The rights of the parties depend primarily upon three deeds, all dated June 24, 1829.  The deed which may properly be considered first runs from Pease and Chapin, the plaintiff's predecessors in title, to Chicopee Manufacturing Company, the defendant's predecessor in title.  This deed recites that Pease and Chapin own mills and water privileges on the river below and near to Chicopee Bridge, that Chicopee Manufacturing Company owns mills and water privileges above said bridge, and that "a question has arisen respecting the relative rights of said parties to the use of the Water of said River."  Then follows a grant from Pease and Chapin to the company in consideration of $1,000 of "full right and title to use as much of the Water as they [the company] may see fit, and to erect and maintain such dam or dams upon & across the said River as they may see fit to erect and maintain, above the said Mills & Dams of the said Pease and Chapin, and not farther down the stream than two rods below the present Grist Mill Dam, and the right & title to turn from sd Chicopee River at any place above the Dams of the said Company all the Water the said Company may choose, and the right freely to use the same for any purposes they or their successors or assigns may wish forever; so that the said Pease and

Chapin their Heirs and assigns shall not claim any damage therefor."

The second deed runs from Chicopee Manufacturing Company to Pease and Chapin. It recites that Pease and Chapin have a dam from the north bank partly across the stream, and that "a question has arisen about the right of said Pease and Chapin to erect & maintain the same there." Then come grants to Pease and Chapin (1) of all the company's right, title and interest in and to the Pease and Chapin dam "as the same now exists," with the right to replace and repair it, (2) the right and privilege to erect and maintain a "wing dam" from the end of the main dam to the lower part of an island above the bridge, (3) of the rights to build and maintain a dam from the upper end of the island "transversely up the stream & towards the south shore thereof so far as may be necessary to turn a sufficiency of water for the works of said Pease & Chapin below, into their Pond, but not to extend to the south shore thereof," (4) of the right to lower the river bed "towards the north shore" for the free passage of water, and (5) of the right to take stone from the river bed for the repair of their mills and dams.

The third deed is from Chapin alone, described as an owner of land on the north bank, to Chicopee Manufacturing Company and conveys rights to withdraw and to use the waters of the river similar to those conveyed to the company by the deed from Pease and Chapin first above described.

We agree with the master that these three deeds, dated the same day, among three neighboring proprietors, concerning the same subject matter, should be construed as parts of a single transaction. *Cloyes* v. *Sweetser*, 4 Cush. 403. *De Witt* v. *Harvey*, 4 Gray, 486, 492. *Cetlin* v. *Bradford*, 242 Mass. 434, 443. By reading and construing them together it is not difficult to understand the nature of that transaction or the rights of the respective parties after the delivery of the deeds. The right of Pease and Chapin, the plaintiff's predecessors in title, to maintain their dam at all was in dispute. They surrendered to Chicopee Manu-

facturing Company any right they may have had to the natural flow of the river and granted to that company the rights "to use as much of the Water as they [the company] may see fit" and "to turn from . . [the river] all the Water the said Company may choose," and "freely to use the same for any purposes they . . . may wish forever" without paying damages therefor. In return Pease and Chapin received from the company $1,000 in money, confirmation of the right to maintain their dam and the rights to extend it, to lower the river bed on the northerly side, and to take out stone. From that time on the water rights of Pease and Chapin and their successors in title, including the plaintiff, were subordinate to the rights of Chicopee Manufacturing Company and its successors in title, including the defendant, to turn from the river all the water they might choose and freely to use it for any purpose they might wish.

The breadth of this grant is not qualified and its force is not weakened by expressions in the deeds which indicate that the parties expected that Pease and Chapin would continue to receive some water. Of course it was expected that they would have some water for their dam, which they were permitted to extend, even if they were not allowed to build it to the southern bank. Apparently it was supposed that by the extensions and the deepening of the bed they might obtain "a sufficiency of water for . . . [their] works" as those works existed in 1829, but we find in the instruments nothing which can fairly be construed as an agreement or guaranty that they were to have this "sufficiency," if the company in accordance with the express grant to it should take out so much water that "a sufficiency" should no longer be obtainable by the means allowed. It was the purpose of the settlement which the parties made to give the absolute right to Chicopee Manufacturing Company and to throw the risk upon Pease and Chapin. The findings, however, show that as a matter of fact Pease and Chapin and their successors in title did have water and operated their plant for a century until they ceased in 1929 for reasons other than lack of water.

Water has come in part over what is now the defendant's dam, in part over a spillway in the defendant's canal, and in part through tail races discharging above what is now the plaintiff's dam. It does not affirmatively appear that the plaintiff or its predecessors in title have ever been deprived of "a sufficiency of water" for their works as those works were in 1829.

The plaintiff's contention that an easement in its favor of "a sufficiency" of water, or of some quantity, is to be spelled by implication out of the deed from Chicopee Manufacturing Company to Pease and Chapin (the second deed hereinbefore described) is disposed of by what has already been said. No easement can be implied when the deeds read together clearly negative any such implication. *Lamb Knitting Machine Co.* v. *Chicopee Manuf. Co.* 273 Mass. 506, 517.

Finally, the plaintiff contends that, apart from the deeds, it has acquired by prescription as against the defendant an easement to have water come to it. The fundamental difficulty with this is that there is nothing whatever to show that since 1829 the plaintiff or its predecessors in title ever took any water adversely to the defendant or its predecessors in title. So far as appears all the water that the plaintiff or its predecessors in title received came to them under their right as lower proprietors to such water as the defendant and its predecessors in title did not choose to withhold by authority of the deeds. The plaintiff and its predecessors have done nothing affecting the defendant or its predecessors or upon their land for which an action could have been maintained as for an invasion of right. On this point the case is within the authority of *Pratt* v. *Lamson*, 2 Allen, 275, 287. See *Brace* v. *Yale*, 10 Allen, 441, 444.

*Decree affirmed with costs.*